## STEVENSON, Estate of, In re.

Ohio Appeals, Second District, Franklin County.

No. 3918.   Decided July 10, 1946.

Harry Margulis, Ashville, C. Russell Younger, Columbus, for Appellant.

R. W. Kilbourne, Columbus, for Appellee.

**OPINION**

**By THE COURT:**

This is a motion submitted by Everett O. Newman, Appellee, to dismiss the appeal for the following reasons:

1. That the appellant, the Estate of Mae Stevenson, deceased, has failed to file their assignments of error and briefs.

2. The proceeding and judgment below are not appealable on questions of law and fact.

3. Appellant has failed to provide an appeal bond.

4. No valid reason exists to hold this appeal as an appeal on questions of law.

5. To strike from the files the bill of exceptions for failure to give notice to opposing counsel.

The action originated in the Probate Court of Franklin County, Ohio, upon the exceptions filed by Everett O. Newman to the inventory of the estate of Mae Stevenson and said action was contested by the executors of the estate. The Probate Court sustained the exceptions as to certain personal property, to which ruling the executors have filed this appeal on law and fact.

As the first and second grounds of the motion are closely related we shall consider them together. The appellee contends that the appellants have failed to file their assignments of error and briefs within the time required under Rule VII of this Court. However, Rule VII is not applicable to law and fact cases, but is limited to appeals on questions of law.

We find that the second ground of the motion is well taken and that this appeal is not permissible on law and fact.

That this proceeding is not a chancery case was definitely decided in the case of **In re Estate of Gurnea, 111 Oh St 715,** where the Court held that probate matters have lost their chancery character in Ohio, and that such proceedings are not now chancery cases as that term is used in the Constitution. This decision was followed in **Squire, Supt., v Bates, 132 Oh St 161.**

With reference to the third ground of the motion which relates to the failure of the appellant to provide an appeal bond, the record discloses that on July 17, 1945, a bond in the sum of $25,000.00 was filed with the American Surety Company of New York as surety, and this bond was approved by the Court on the same date. The giving of this bond eliminated the necessity of the executor filing an appeal bond. **Sec. 12223-12 GC,** provides as follows:

"Executors, * * *, acting in their respective trust capacities, who have given bond in this state, with surety according to law, and the state of Ohio or an officer thereof shall not be required to give the bond mentioned in §12223-9 GC."

Sec. 12223-6 GC provides:

"Except as provided in §12223-12 GC, no appeal shall be effective as an appeal upon questions of law and fact unless and until the order, judgment, or decree appealed from is superseded by a bond in the amount and with the conditions as hereinafter provided, and unless the said bond be filed at the time the notice of appeal is required to be filed."

The appellee contends that since the will of Mae Stevenson, deceased, provided that no bond be required of the executors, the $25,000.00 bond which was approved by the Court was not given "according to law," as provided in §12223-12 GC. In construing this section, "who have given bond in this state, with surety according to law," we are of the opinion that the words "according to law" apply to the word "surety" immediately preceding it, and have no application to any other part of the section. Since a $25,000.00 bond was given and approved by the Court, we are of the opinion that no further bond was necessary to perfect this appeal.

Sec. 12223-22 GC provides a valid reason why this appeal should be held on questions of law. This section provides:

"Appeals on questions of law and fact may be taken:
(2) Whenever an appeal on questions of law and fact is taken in a case in which it is determined by the appellate court that the appellant is not permitted to retry the facts, the appeal shall not be dismissed; but it shall stand for hearing on questions of law."

Also, §11564 GC provides:

"* * *, when ever an appeal is taken on questions of law and fact and the Court of Appeals determines that the case cannot be heard upon the facts and no bill of exceptions has been filed in the cause, that the Court of Appeals shall fix the time, not to exceed thirty days, for the preparation and settlement of a bill of exceptions."

A bill of exceptions has been filed in this Court, but counsel for the appellee urges that he was not notified that the bill of exceptions had been filed in the Probate Court and did not know of its approval by the Probate Judge or the filing in the Court of Appeals.

Under §11565 GC counsel for the appellee was entitled to this notice, as this section provides:

"On the filing of such bill of exceptions, the clerk forthwith shall notify the adverse party, or his attorney, of its filing."

"The duties of the trial court in respect to perfecting bill of exceptions are merely directory and ministerial in character when excepting party has performed statutory duty required of him."

**The State, ex rel. The Prudential Ins. Co. of America v. Price, 45 Oh Ap 209.**

Under the provisions mentioned in §11564 GC we are granting the appellant thirty days from the date of the filing of this entry for the refiling of the bill of exceptions, should he so desire, and also for the assignment of errors and brief. Should the appellee be not satisfied with the bill of exceptions it cannot be corrected by this Court, but it may on motion be remanded to the trial court for a diminution of the record.

The motion is sustained as indicated.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.

No. 3918. Decided October 4, 1946.

R. W. Kilbourne, Columbus, for Exceptor-Appellee.

C. Russell Younger, Columbus, Harry L. Margulis, Ashville, for Executors.

APPEAL ON QUESTIONS OF LAW

OPINION

By MILLER, J.

This is an appeal on questions of law from the Probate Court of Franklin County, Ohio, wherein exceptions were filed to the inventory and appraisement by Everett O. New-

man, one of the co-executors of the estate of Mae Stevenson, deceased, wherein said Everett O. Newman claimed to be the owner of certain personal property consisting of stocks and bonds which had been included as a part of the inventory and appraisement and a part of the assets of the estate of the said Mae Stevenson.

The trial court sustained the exceptions and ruled that the exceptor was the owner of the personal property claimed by him and included as a part of the assets in the inventory and appraisement filed in said estate, finding that they had been a gift by the decedent to the exceptor.

The question in dispute herein is whether or not the exceptions to the inventory and appraisement of the appellee shall be sustained. The error assigned is that the finding of the Probate Court is not sustained by the evidence and is contrary to law.

The following facts were stipulated by and between counsel for all the parties and with the approval of the Court:

That Mae Stevenson, deceased, during her lifetime rented a safety deposit box at the Huntington National Bank in Columbus, Ohio; that Frank S. Graves was on or about the 19th day of May, 1945, duly appointed and qualified as guardian of the said Mae Stevenson; that upon the first examination of the contents of said safety deposit box he found a sealed envelope, upon the face of which was written the following language: "All of the contents of this envelope belongs to Everett O. Newman," signed "Mae Stevenson."; that in addition to the writing above set forth on said envelope there was attached to the outside of said envelope a note which reads as follows: "Everett's sister, Mrs. Walker Stansbury, 1309 Holley Street, Dayton 10, Ohio. In case of my death turn this over to his sister, above address," signed "Mae Stevenson." The contents of said envelope were as follows: A number of gold debenture bonds, payable to bearer; certain shares of common stock issued in the name of Mrs. Mae Stevenson and endorsed "Mae Stevenson" in the presence of a witness, not dated and in blank. Attached to these shares was the following: "Everett: if anything happens to me take this to Clark Burt at Vercoe and have him transfer it to you: I am giving it to you now three-sixteen-forty-four", signed "Mae Stevenson."

Also in said envelope there was found three City Service Company bonds payable to bearer. Attached to these bonds was the following: "$300.00. This is the property of Rose Ri-

ley, 143 Woodrow Avenue. Everett if I do not need any of this to pay my last bills will you see that Rose gets it; it is the same as money." Signed "Mae Stevenson."

It was further stipulated that Everett O. Newman and Frank S. Graves were authorized by the deceased to enter said safety deposit box, and that neither of these ever at any time entered said box for any purpose whatsoever, and that the last entry in said safety deposit box was made by the deceased on or about the 16th day of March, 1944. There were numerous other envelopes found containing stock certificates and personal property with statements designating others as being the owner, but the ownership of which is not involved in this action.

It was further stipulated and agreed that all writing contained on the envelope and other slips of paper and purporting to be the signature of Mae Stevenson are her genuine signatures.

Kathleen Preston who was called as a witness testified that Mae Stevenson, deceased, gave to Everett O. Newman on the day prior to the appointment of the guardian, a key to her safety box with instructions to go "and get what was his out of her lock box."

The trial Court held that the record was sufficient to show that there was an intention of Mae Stevenson to give the property under consideration to Mr. Newman and that the giving of the key and acceptance of the same by Mr. Newman constituted a delivery and acceptance. The Court points out that had she died before delivering the key to Mr. Newman her whole plan would have had no legal effect.

Perhaps the most extended and comprehensive definition of the necessary elements to constitute a completed gift inter vivos is found in the case of **Flanders v Blandy, 45 Oh St 108,** where it is said:

"A gift inter vivos has been defined as an immediate, voluntary and gratuitous transfer of his personal property, by one to another. It is essential to its validity that the transfer be executed, for the reason that there being no consideration therefor, no action will lie to enforce it. A gift inter vivos has no reference to the future, but goes into immediate and absolute effect. To render the gift complete, there must be an actual delivery of the chattel, so far as the subject is capable of such a delivery, and without such a delivery the title does not pass. If the subject be not capable of actual delivery, there must be some act equivalent to it. The necessity of

delivery,' says Chancellor Kent, 'has been maintained in every period of the English law'. The donor must part not only with the possession, but with the dominion and control of the property. An intention to give is not a gift, and so long as the gift is left incomplete, a court of equity will not interfere and give effect to it."

"Gifts inter vivos, like gifts causa mortis, are watched with caution by the courts, and to support them clear and convincing evidence is required."

Flanders v. Blandy, supra, 113.

Counsel for appellants refers to the case of **Bolles v Trust Company, 132 Oh St p 21**, to support their contention. The facts in this case disclose that George A. Bolles and Clara C. Bolles were husband and wife; that they rented a lock box in the name of the corporation which they controlled and to which both had access. The husband left certain securities in this box and testimony was offered which would establish the fact that he had given these securities to his wife. The evidence disclosed that Mr. Bolles visited this safety box some forty-nine times between the time of its rental and his death, and that during the same period of time Mrs. Bolles visited it only on two occasions. On page 28 the Court said:

"The real stumbling block we meet in this case is the matter of delivery. Is there clear and convincing evidence of the delivery of the securities involved, with relinquishment of dominion and control over them? Where is the definite and tangible proof as to how, when and where any such delivery occurred? * * * Certain undisputed evidence in this case is indicative that there was no such delivery, including surrender of dominion, as the law demands. Among the indicia are the facts that the securities were contained in a box to which George A. Bolles had free access and to which he made frequent visits; that they were kept and found in a folder bearing his name or initials; that they stood in his name without endorsement or assignment; that he exercised incidents of ownership in the manipulation of certain of the securities at different periods, and that he collected the dividends and interest therefrom and deposited the same to his 'individual account in the bank."

The facts in this case are different from the case at bar in that the donor at no time surrendered complete posses-

sion of the safety deposit box to the donee as in this case. One of the requirements to constitute a valid gift is the severance of all control or dominion over the property. In the case at bar we think that the evidence supported the finding of the trial court that Mae Stevenson released all her control over the property when she gave the key to the lock box to Everett O. Newman. The record does not disclose that she was possessed of a duplicate key, and in the absence of such a showing the presumption is that she was not.

We find a case very similar to the one at bar. Rule v. Fleming, 85 Ind., 487:

"Where the delivery to the donee by a donor who was about to undergo a serious operation, from which she did not expect to recover and which proved fatal, of her duplicate key to a safe deposit box in a bank taken in the names of the donor and donee, or survivor, was held to be sufficient delivery to constitute a valid gift causa mortis of the contents of the box, it was said that the donor thereby had done all things which were necessary to invest the donee with the right and power to have exclusive possession of the property, and that nothing in this behalf remained to be done after the death of the donor."

In the case of Braun v. Brown, 14 Cal. (2d), 346, it was held:

"1. The delivery essential to a gift of the contents of a safe deposit box may be made by a transfer of the key; and the fact that there is a duplicate key is immaterial where such duplicate is locked in the box."

"11. The fact that one to whom another handed the key to a safe deposit box with the statement, 'everything in the box belongs to you', and who retained the key, did not use the key to take possession of the property before the death of the donor twenty days later does not make the gift ineffective for want of acceptance."

Counsel for appellants cite the case of **Gano v Fisk, 43 Oh St 462**, to support their contention that the delivery of a key to a lock box does not constitute delivery of the contents. We do not believe the facts in this case are similar to the case at bar, they being as follows:

"2. G was a man of advanced age, having a wife and daughters by a first wife, and, by the present wife, a son, with whom he boarded; his property consisted partly of a farm and stock thereon, but mostly of promissory notes of various amounts; before his last sickness he had expressed a desire 'that his children should have his notes and his son should have his farm'; on the morning of the day of his death, and in the presence of a daughter's husband, herself and a sister, G., called the daughter and said to her: 'My notes are in a little box on the bureau there; I want you to take them and divide them equally among you children.' He told her to get the key to the box, and she got the key and tried it in the box, and gave the key to her husband for safekeeping. After his death intestate, she took the box and did not divide the notes, but returned them to the administrator, and they were appraised and held as a part of the estate. In an action by the daughters, claiming for themselves and the son, the notes and their proceeds, as against the administrator and the widow. **Held**: 1. These facts do not show such a delivery as constitutes a valid gift causa mortis. 2. These notes and their proceeds are assets of the estate, and the widow is entitled to her proper part thereof."

In discussing this case on page 472 the Court said:

"Was she to collect the money due on the notes, and then divide the proceeds equally among them? If so, the gift was not complete, and no title passed. His death revoked the gift.

"Or was Mrs. Fisk to divide the notes into four equal amounts in value, and then deliver to each child a definite parcel of these thirty-eight notes. This was never done, and these notes, it seems, could not be so divided So there never was a separation of the notes made so as to vest in each donee an ownership in particular notes.

"But, had the notes been so that they could be equally divided, how could the doubtful or worthless notes be disposed of? Who would take them? Or should she disregard them? Gano did not hand the notes to Mrs. Fisk, and say, 'I give these notes to you four children'; neither did he say, 'I give these notes to you children equally, one-fourth part to each'. Something more must be done to complete the gift."

The appellants are contending further that this key was given to Mr. Newman after the application for a guardian

had been made and on the day before the actual appointment, and that since Newman had knowledge of the pendency of the guardianship, that under **10507-4 GC** the gift was invalid. This section after providing for the service to be made on certain individuals in the matter of the appointment of a guardian, provides:

"From the service of such notice until the hearing, as to all persons having notice of such proceeding, no sale, gift, conveyance or encumbrance shall be valid, of the property of such incompetent, habitual drunkard, idiot, imbecile, lunatic or confined person."

It is true that this section would be a bar to a valid gift provided that Mr. Newman had knowledge of the pendency of this proceeding. We have examined the record carefully and find that Newman was told by Mr. Graves of the application being made for the appointment of a guardian, but the record is not definite as to when he acquired this information. If it was acquired after the presentation of the key, then this section would not apply. Since this information is not contained in the record, this section cannot be further considered.

We are in full accord with the findings of fact and conclusions of law as announced in the decision of the trial court, and the judgment is affirmed.

HORNBECK, PJ, and WISEMAN, J, concur.